# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**DOMINIQUE ASHLEY CHILDS,**

    Petitioner,

v.                                    Civil Action No. **3:21CV695**

**COMMONWEALTH OF VIRGINIA,**

    Respondent.

## MEMORANDUM OPINION

Dominique Ashley Childs, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 challenging his conviction of abduction with intent to defile in the Circuit Court of the Fairfax, Virginia (hereinafter, "Circuit Court"). In his § 2254 Petition, Childs argues that he is entitled to relief based upon the following claims:[1]

| | |
|---|---|
| Claim 1 | Petitioner was denied the effective assistance of counsel because counsel did not pursue the best defense.<br>(a) Counsel failed to conduct an adequate investigation into the line of defense counsel chose to rely upon at trial and failed to adequately present that defense.<br>(b) Counsel failed to conduct an adequate investigate into other plausible lines of defense. |
| Claim 2 | Petitioner was denied the effective assistance of counsel because counsel failed to adequately challenge the testimony of:<br>(a) the victim; and,<br>(b) Detective Christianson. |
| Claim 3 | Petitioner was denied the effective assistance of counsel because counsel failed to conduct an adequate investigation into the evidence the prosecution intended to use against Petitioner:<br>(a) counsel failed to investigate the eyewitnesses; |

---

[1] The Court employs that pagination assigned by the CM/ECF docketing system to citations to the record. The Court corrects the spelling, punctuation, and capitalization in the quotations from Childs's submissions. The Court omits the paragraph numbers from the quotations from the Circuit Court's habeas opinion.

(b) counsel failed to investigate Childs's phone records;

(c) counsel failed to investigate who told Childs's son to throw away his hat;

(d) counsel failed to investigate the line-up that was conducted by Detective Christianson;

(b) "counsel chose a defense that proved the exact same elements as abduction, but the facts were of a simple assault," (ECF No. 39-1, at 18);

(e) counsel failed to investigate what specific acts and elements of abduction the Commonwealth was planning on relying upon at trial;

(f) counsel failed to investigate evidence that the victim was not listening to music at the time of the incident; and,

(g) counsel failed to adequately investigate the victim's pants.

Claim 4        Counsel elicited damaging statements and evidence regarding the victim's pants and the existence of witnesses.

Claim 5        Counsel failed to call favorable witnesses:

(a) counsel failed to call family members to corroborate Petitioner's testimony;

(b) counsel failed to call Bruce, Tierra Faggin's coworker;

(c) counsel failed to call Petitioner's prior counsel, Charles Swedish;

(d) counsel failed adequately prepare Petitioner's expert witness; and,

(e) counsel failed to adequately present other evidence favorable to Petitioner.

Claim 6        Counsel labored under an actual conflict of interest.

Claim 7        Counsel was ineffective in post-trial proceedings:

(a) counsel failed to aid petitioner in filing post-trial motions and did not say anything at the hearing on the motion to withdraw as counsel;

(b) counsel failed to meet with Petitioner until two days before sentencing and,

(c) counsel failed to inform Petitioner as to which issues were preserved for appeal.

Claim 8        Counsel failed to strike a biased juror and other jurors.

Claim 9        Counsel failed to object to jury instructions:

(a) counsel failed to object to a jury instruction that allowed the prosecution to prove abduction and intent to defile with the same act;

(b) counsel failed to obtain an instruction on incidental detention; and,

(c) the cumulative effect of counsel's errors prejudiced Petitioner.

Claim 10       Petitioner was denied the effective assistance of appellate counsel.

Claim 11    There was not sufficient evidence to support the conclusion that Petitioner acted with an intent to defile.

For the reasons that follow, Childs's claims will be DISMISSED as lacking in merit.

## I. Applicable Constraints Upon Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Given this standard, the decisions of the Virginia courts with respect to Childs's claims figure prominently in this Court's opinion.[2]

---

[2] Childs did not raise Claims 8, 9(b), 9(c), and parts of Claim 10 in the Virginia courts.

## II. Sufficiency of the Evidence

In Claim 11, Childs contends that there was not sufficient evidence to support to the conclusion that he abducted the victim with the intent to defile her. A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

In rejecting Child's challenge to the sufficiency of the evidence on direct appeal, the Court of Appeals aptly summarized the general evidence of Child's guilt as follows:

> The evidence established that on the afternoon of August 14, 2017, while walking in her neighborhood in Reston, the victim (J.E.) saw a man she did not know near the Metro station. The man, later identified as appellant, tried to get her attention, but she kept walking. At about 2:30 p.m., she passed a neighborhood swimming pool, which was closed, but a silver Hyundai sedan was in the parking lot. The victim noticed that the passenger seat was reclined and thought that perhaps someone was napping in the car. J.E. saw no other persons in the area. Suddenly, appellant grabbed her from behind, wrapping his arms around her body and holding a hand over her mouth. He dragged her a few feet from the sidewalk into an adjacent wooded area and asked if she wanted to die. Appellant started to pull down her pants but then "just got up and ran." Appellant returned to pick up his hat, which had fallen off his head. He drove away in the Hyundai, and J.E. called 9-1-1. A police officer who responded to the scene saw two footprints and a knee print near a green electrical box that was located next to the wooded area. The leaves near the box appeared to have been "disturbed." The officer also noticed "light mud" on J.E.'s clothes.
> J.E. described her attacker as Hispanic and "stocky," wearing shorts, a gray tee-shirt, and a red hat. She also said that he had a brown beard and brown hair. The police prepared a sketch based on the information that J.E. provided, and the sketch was circulated as a news alert. The sketch showed the suspect wearing a

4

ball cap with a "W" on the crown. Appellant testified that he owned a similar cap, and a photo of him wearing the cap was presented at trial.

Appellant's then girlfriend, Tierra Faggins, told her employer that she recognized appellant from the sketch, and the employer notified the police. Faggins testified at trial for the Commonwealth that when she came home from work on August 14, 2017, she overheard appellant say in a phone conversation that he had mistaken a person for someone else and had "really messed up." Faggins said that the silver Hyundai was her car[3] and that appellant had driven it on August 14, 2017. Faggins denied that she and appellant had tried to sell the car after August 14, but she said that appellant had encouraged her to look for another car.

On the morning of August 28, while the police were conducting surveillance on appellant, they saw appellant's eleven-year-old son leave appellant's townhouse carrying a red ball cap. The boy walked to the area where the residents deposited their trash, put the cap into a plastic bag that held someone else's trash, and buried the bag under other bags of trash. The boy then left in the Hyundai with appellant, Faggins, and two other children. The police retrieved the cap from the trash. The cap was red with a star on the crown part, and there was some dirt on the brim. A photo of appellant wearing the cap was introduced, and Faggins testified that she recognized the cap as appellant's.

The police followed appellant and Faggins as they drove the three children to school. Appellant then exited the car, crossed four lanes of traffic, and began walking south on Route 28. He crossed the highway again and walked north. Appellant sat briefly on a bench in a public library parking lot. When he resumed walking, the officers arrested him.

Appellant testified at trial that about six weeks earlier he had been in an altercation with a group of four persons at a local grocery store and that after he left the store with his two daughters, he saw the same group in a car next to him on the street and heard noises he thought were gunshots, but later realized were firecrackers. Appellant said that when he saw J.E. walking near the Metro station on August 14, 2017, he thought that she had been with the group in the store and wanted to confront her. When she ignored him, he tried to follow her. He said that he parked the Hyundai at the swimming pool because he needed to use the restroom. When he saw J.E. walking by the pool, he grabbed her and "slammed her to the ground." He said that he fell on top of her, but then got up and returned to his car. He fled when he thought that she was calling 9-1-1. Appellant went to a relative's apartment in Alexandria a few days after the incident and stayed there for one week. Appellant testified that he had not intended to sexually molest J.E., and he denied trying to remove her pants. Appellant also said that he owned "a lot of red hats," including the red cap the police found in the trash on August 28, 2017. Appellant said that he was not wearing that cap on August 14, 2017. He testified that he wore a gray and black cap with a red Bulls logo on August 14. He introduced a video that was captured on surveillance cameras at a post office branch about 2:00 p.m.

---

[3] The trial transcript reflects that Faggins said that her license plate number was "BSE-7824," but the photographs of the car show that the license plate number is VNC-7824. J.E. told the 9-1-1 dispatcher that the Hyundai's license plate began with V.

on August 14 that purported to show appellant wearing the Bulls cap, a dark gray shirt, and "blue jean shorts." Detective Christian[son] testified, however, that she had not thought when she had reviewed the post office video that the man seen in the video was appellant.

(ECF No. 46-2, at 3–5.)

With respect to the element of intent to defile, the Court of Appeals stated:

A conviction for abduction with intent to defile requires proof that the assailant intended to sexually molest the victim at the time of the abduction. *See Crawford v. Commonwealth*, 281 Va. 84, 102-03 (2011); *see also Swisher v. Commonwealth*, 256 Va. 471, 496 (1998) (holding that the terms "sexually molest" and "defile" are interchangeable). The term "sexually molest" includes the intentional touching of the complaining witness' intimate parts or material directly covering such intimate parts, meaning the genitalia, anus, groin, breast, or buttocks. *See* Code § 18.2-67.10. "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Kolesnikoff v. Commonwealth*, 54 Va. App. 396, 405 (2009) (quoting *Holley v. Commonwealth*, 38 Va. App. 158, 165 (2002)). A person's intent may be shown by his conduct and statements. *See id.* A victim's testimony, if believed, is sufficient by itself to prove an assailant guilty of sexual crimes. *See Nobrega v. Commonwealth*, 271 Va. 508, 519 (2006); *Le v. Commonwealth*, 65 Va. App. 66, 77 (2015). J.E. testified that appellant grabbed her from behind as she was walking, dragged her from the sidewalk to an adjacent wooded area, and tried to pull down her pants. Because the evidence established "a *prima facie* case for consideration by the fact finder" the trial court did "not err in denying [a] motion to strike the evidence." *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)).

Appellant argues that the evidence did not prove the required intent because J.E.'s testimony was inherently incredible because it was inconsistent with the statements she gave to the 9-1-1 dispatcher and the investigating officers. "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *See Gerald*, 295 Va. at 486–87 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). Determining the "credibility of the witnesses is a matter solely for the finder of fact, who has the opportunity to observe the witnesses testify." *Severance v. Commonwealth*, 67 Va. App. 629, 649 (2017), *aff'd*, 295 Va. 277 (2018); *see Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (fact finder is entitled to resolve any conflicts in the evidence). The fact finder may accept the parts of a witness' testimony it finds believable and reject other parts as implausible. *See Pugliese v. Commonwealth*, 16 Va. App. 82, 92 (1993).

Although there were some inconsistencies in what J.E. told the 9-1-1 operator and the police officers, her testimony was "not automatically

render[ed] . . . incredible." *Fordham v. Commonwealth*, 13 Va. App. 235, 240 (1991). The jury, sitting as the fact finder, accepted J.E.'s testimony and rejected appellant's testimony. "Potential inconsistencies in testimony are resolved by the fact finder," not the appellate court. *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Id.* at 291 (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). We conclude that the Commonwealth's evidence was competent, credible, and sufficient to sustain appellant's conviction for abduction with intent to defile. *See Commonwealth v. Hudson*, 265 Va. 505, 513 (2003) (question before appellate court is not whether some evidence supports appellant's theory, but whether a reasonable fact finder, having considered all the evidence, could have rejected appellant's theory and found him guilty of the charged offense beyond a reasonable doubt).

(*Id.* at 5–7 (alterations in original).)

Childs grabbed the victim from behind, threatened to kill her, pulled her into the woods and attempted to pull her pants down. (ECF No. 46-7, at 208–09.) Such evidence amply supports the conclusion that Childs abducted the victim with the intent to defile or sexually molest her. Accordingly, Claim One lacks merit and will be DISMISSED.

### III. Alleged Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance." *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective

assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Trial Counsel

In Claim 1(a), Childs contends that counsel failed to conduct an adequate investigation into the line of defense counsel chose to rely upon at trial and failed to adequately present that defense. In Claim 1(b), Childs contends that counsel failed to investigate other plausible lines of defense, such as the victim's mental state caused her to overreact to Childs's action. In rejecting these claims on state habeas, the Circuit Court observed:

> At its core, this claim challenges counsel's trial strategy and chosen defense. Such decisions, however, are tactical decisions reserved to trial counsel. Indeed, once trial counsel was appointed to represent petitioner, she alone had control over the presentation of the case, and it was for trial counsel to decide the best defense strategy. *Townes v. Commonwealth*, 234 Va. 307, 320, 362 S.E.2d 650, 657 (1987); *see also Spencer v. Commonwealth*, 238 Va. 295, 303, 384 S.E.2d 785, 790-91 (1989). "[T]he lawyer has - and must have-full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988).
>
> Specifically, "counsel's reliance on particular lines of defense to the exclusion of others - whether or not [she] investigated those other defenses - is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1360 (2000). Here, it is clear from the record, and counsel's affidavit, that the strategy at trial was to discredit the victim though the use of her many inconsistent statements about the events in question. (Exhibit E, Affidavit of Trial Counsel). Indeed, when pressed on the details of the assault, the victim repeatedly contradicted herself and said she did not remember. Her memory issues combined with her drug use permitted counsel to argue powerfully in closing that the victim was simply not a reliable narrator, and that the victim misinterpreted the defendant's assault as being sexual in nature. (6/21/19 Tr. 38; 41; 45). Trial counsel's trial strategy was a reasonable one; the fact that counsel was not ultimately successful in securing an acquittal for the petitioner does not render her tactical decision unreasonable. *See Lawrence v. Branker*, 517 F.3d 700, 716 (4th Cir. 2008) ("effective trial counsel cannot always produce a victory for the defendant").
>
> Petitioner, however, argues that trial counsel should have investigated how ingesting marijuana oils compares with smoking marijuana and should have hired an expert to present this information to the jury. Barring expert testimony, he suggests that counsel should have questioned the victim about how marijuana oil affects her, personally. (Mem. 1). He also alleges that trial counsel should have

8

discovered that petitioner had "active" mental "disorders," which influenced her perception of what occurred. (Mem. l).

The petitioner has failed to proffer sworn testimony from any expert regarding either of these defenses. The Court finds that this failure alone is fatal to his claim. *See Muhammad v. Warden of the Sussex I State Prison*, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007) (denying relief where petitioner failed to proffer affidavits regarding expert witnesses expected testimony). Indeed, in order to carry his burden, the proffered "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

Absent expert testimony, trial counsel was also not ineffective for failing to question the victim about how marijuana affected her, personally, as counsel could not have predicted whether the victim's responses would have been detrimental to the petitioner. Notably, the petitioner [has not] proffered any evidence from the victim to indicate that her answers to these questions would have been favorable to him. Nor does the record reveal any. And, by not giving the victim the opportunity to explain herself, counsel could control the narrative presented to the jury at closing. *See United States v. Clayborne*, 509 F.2d 473, 479 (4th Cir. 1974) ("knowing when not to cross-examine an adverse witness is the art of cross-examination at its highest").

Likewise, as noted by counsel, petitioner has not demonstrated that questions regarding generic mental health concerns such as anxiety and depression would have been relevant. Trial counsel was not ineffective for failing attempt to introduce inadmissible evidence. *See Correll v. Commonwealth*, 232 Va. 454, 470, 352 S.E.2d 352, 361 (1987) (holding counsel had no duty to object to admission of presentence report because it was admissible). Indeed, as noted by the prosecutor, the documentation he acquired from the jail was not temporally connected with this crime, did not contain a medical diagnosis, and was completed by a third-party, not the victim. Regardless, it was not the victim's perception of the petitioner's intent that mattered, but rather what conclusion the jury should reach about his intent based on the circumstantial evidence before them.

Finally, and perhaps most significantly, as noted by trial counsel, the trial counsel's development of the defense's theory of the case was significantly limited by the petitioner's testimony in which he admitted that he followed the victim and that he "slammed [her] to the ground," but maintained he had done so because he thought she was someone else that he had been in an altercation with at a grocery store. (6/20/18 Tr. 101; 103 ). Under these circumstances, counsel could not argue that it was the victim's alleged paranoia or drug use that caused her to testify that she was being followed by a strange man who tackled her to the ground. The petitioner admitted these events actually happened. Likewise, it is unsurprising that such events would lead to an emotional response, both on the 9-1-1 call and at trial. Particularly in light of petitioner's own testimony, avoiding suggesting the victim was paranoid or delusional was reasonable. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every

case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (internal citation omitted). Under these circumstances, the Court concludes that the petitioner cannot satisfy either prong of the *Strickland* test, and claim 1, including subparts (a) and (b) should be dismissed. 466 U.S. at 694.

(ECF No. 46-5, at 8–11 (second to last alteration added).)

The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's rejection of Claims 1(a) and 1(b). *See* 28 U.S.C. § 2254 (d)(1)–(2). Counsel was in an extremely difficult situation because, by Childs's own admissions, he followed the victim, grabbed her, picked her up, "slammed her to the ground," landed "[o]n top of her" and admitted to asking her, "Do you want to die?" (ECF No. 46-7, at 872, 875–76.) Further, Childs conceded that he had never seen the victim before the incident and was mistaken to believe that she was among the group of four people he had seen in a grocery store a couple of weeks before the attack. (*Id.* at 914.) Counsel's performance was more than reasonable given the circumstances facing her. Moreover, Childs fails to demonstrate any possibility of a different result, but for counsel's alleged omissions. Accordingly, Claims 1(a) and 1(b) will be DISMISSED.

Next, in Claim 2(a), Childs faults counsel for failing to adequately impeach the victim. Specifically, Childs "alleges counsel failed to impeach the victim regarding the route she took, whether she fought [him], whether she believed the pool was open, whether she was listening to music at the time of the assault, whether there were witnesses present, and what she observed about [him]." (ECF No. 46-5, at 11–12.) In rejecting the claim, the Circuit Court stated:

> At the outset, it is well-established that a proper analysis of the lawyer's "performance" requires the court to consider "all the circumstances." *See Bullock v. Carver*, 297 F.3d 1036, 1046–51 (10th Cir. 2002). To put it another way, in analyzing a claim that trial counsel "should have done something more, [the Court] first look[s] at what the lawyer did in fact." *Chandler*, 218 F.3d at 1320.

Here, trial counsel conducted a thorough and extensive cross-examination of the victim. *See Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."). Trial counsel cross-examined the victim on her criminal history, eliciting that she had been convicted of a crime of moral turpitude. (6/18/18 Tr. 155). She also cross-examined the victim vigorously regarding the description she gave to the 911 operator, and the jury was able to hear the inconstancies between the victim's recollection and the recorded call that was played earlier. (6/18/18 Tr. 156). Counsel also elicited that the victim had made inconsistent statements to the responding officer and at the preliminary hearing regarding the defendant's approach, whether he pulled her pants down, whether he screamed, and whether he had previously spoken to her near the metro stop. (6/18/18 Tr. 157–160; 213). Counsel also elicited inconsistencies between petitioner's direct testimony and what she told responding officers about where the assault occurred. (6/18/18 Tr. 163). Finally, the victim admitted that she had been ingesting marijuana oils earlier that day (6/18/18 Tr. 151–152) and that later in the day she texted with her ex-boyfriend regarding making edibles. (6/18/18 Tr. 173–74).

Inconsistencies in the victim's testimony- and the Commonwealth's case in general - were again argued in both of counsel's motions to strike and also at closing, where counsel argued vigorously that the evidence did not support an intent to defile, and that the victim herself was inherently incredible due to the conflicting nature of her statements and her drug impairment. (6/19/18 Tr. 24–26; 37; 6/20/18 Tr. 195–196; 199; 6/21/18 Tr. 41–67). In fact, counsel's extensive closing argument very closely mirrors the petitioner's pleading in terms of highlighting inconsistencies in the evidence. (6/21/20 Tr. 41–67). Ultimately, again, the fact that the petitioner is dissatisfied with the outcome counsel's efforts does not mean counsel was ineffective. *See Lawrence*, 517 F.3d at 716 ("effective trial counsel cannot always produce a victory for the defendant").

(*Id.* at 12–13.) Again, Childs fails to demonstrate the Circuit Court's conclusion that he failed to demonstrate deficiency or prejudice was unreasonable. *See* 28 U.S.C. § 2254 (d)(1)–(2).[4] Accordingly, Claim 2(a) will be DISMISSED.

In Claim 2(b), Childs contends that counsel failed to adequately cross-examine Detective Christianson regarding the victim's inconsistent statements and Faggins's inconsistent statements. Childs asserts that counsel's cross-examination failed to elicit Christianson's "history for bad

---

[4] With regards to the issue of abduction, the victim testified that she was walking on the sidewalk, when Childs "grabbed" her and "dragged [her] into the woods." (ECF No. 46-7, at 206.)

faith," bias in this investigation, and the inadequacies of her investigation in general.  (ECF No. 39-1, at 13.)  In dismissing this claim, the Circuit Court stated:

> This claim also cannot satisfy either prong of the *Strickland* test.  First, the petitioner fails to proffer any facts to support his statement regarding Detective Christianson's general "history" of bad faith.  This failure is fatal to his claim.  *See Hedrick v. Warden*, 264 Va. 486, 521, 570 S.E.2d 847, 862 (2002) (finding habeas petitioner had not established deficient performance or prejudice because he failed to provide any evidence to support claim); *Muhammad*, 274 Va. at 19, 646 S.E.2d at 195 (habeas corpus relief is not warranted where the petition fails to "articulate a factual basis to support [his] claim").[5]
>
> Further, the specific allegations made by the petitioner pertaining to this case were addressed on the record at trial and are without merit.  The prosecutor expressly questioned Detective Christianson regarding her instruction to Faggins to delete their text messages. (6/18/18 Tr. 116–117).  As Christianson explained, Faggins was still living with the petitioner while she was cooperating with the police and she was fearful of him. (6/18/18 Tr. 116–117).  There has been no allegation that Christianson deleted messages from her own phone, and indeed, the fact that the petitioner is aware of these messages demonstrates that the evidence in question was preserved and provided to the defense, where relevant.  Similarly, the edited video referenced by the petitioner appears to be a social media posting using the phone application Snapchat, which was referenced at trial.  All parties agreed that the video was edited by the victim prior to posting, and that some of those edits occurred while she was waiting to speak with police. (6/20/18 Tr. 3–11).  The video, however, was a light-hearted depiction of the victim . . . using animated filters, and unrelated to the crime or the crime-scene. (6/20/18 Tr. 6).  Further defense counsel was able to introduce relevant still-shots from video through Detective Boffi. (6/20/18 Tr. 52–54).
>
> Finally, the remainder of petitioner's assertions in this section amount to a claim that counsel failed to challenge the adequacy of the police investigation conducted by Detective Christianson. The Court finds that this claim is not supported by the record.  In particular, Detective Christianson did testify that she conducted multiple interviews with the victim, and on cross-examination discussed the multiple statements the victim made regarding whether the defendant had pulled on her pants. (6/18/18 Tr. 120, 130).  Counsel also addressed the post-office video with Christianson on cross-examination and the defendant testified regarding the video extensively as well.  Further, other officers conducted the initial Faggins interview.  Accordingly, Detective Christianson would have no knowledge of that interview, or the involvement of Faggins's supervisor, Greg White.  Contrary to petitioner's suggestion, moreover, White testified at trial, and counsel was able to cross-examine both the detectives and White regarding this case. (6/19/19 Tr. 53–71; 6/18/19 Tr. 230–237).

---

[5] The prosecutor also noted in her affidavit that Detective Christianson has no such reputation.

12

In sum, trial counsel did essentially what petitioner claims should have been done. *See United States v. Williams*, 631 F.2d 198, 204 (3d Cir. 1980) (no ineffective assistance of counsel where defendant ultimately concurred in his trial counsel's tactical decision). Moreover, petitioner cannot establish counsel was ineffective merely because he can "nitpick gratuitously" counsel's performance; indeed "the constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell*, 348 F.3d 177, 206 (6th Cir. 2003). The Court concludes that claim 2, including all sub-parts, is without merit and should be dismissed.

(ECF No. 46-5, at 13–16 (alteration in original, except for altered footnote number) (second footnote omitted).) Once again, Childs fails to demonstrate deficiency or prejudice. Accordingly, Claim 2(b) will be DISMISSED.

In Claim 3(a), Childs faults counsel for failing to adequately investigate "the eyewitnesses mentioned throughout the proceedings . . . ." (ECF No. 39-1, at 15.) As explained by the Circuit Court:

the testimony at trial consistently indicated that there were no eyewitnesses to the attack. And the prosecutor confirmed as much in her affidavit. Trial counsel cannot be found ineffective for failing to investigate witnesses that did not exist. *Cf. Redus v. Swenson*, 468 F.2d 606, 607 (8th Cir. 1972) ("Although the Constitution guarantees the right to competent counsel, we cannot expect counsel to be omniscient or clairvoyant."). Moreover, counsel notes in her affidavit that she did investigate by visiting the crime scene multiple times and seeking any buildings along the victim's route that had surveillance in an attempt to corroborate or discredit the victim's version of events. Finally, when it was apparent that no witnesses existed, counsel used this fact to impeach the thoroughness of the police investigation as well as the victim's suggestion to the contrary at trial. *Contrast, e.g.*, 6/18/18 Tr. 186–187 *with* Tr. 214. The Court concludes that claim 3(a) is without merit and should be dismissed.

(ECF No. 46-5, at 16–17.) The Court agrees. Childs fails to demonstrate deficiency or prejudice. Claim 3(a) will be DISMISSED.

In Claims 3(b) and 3(c), Childs complains that counsel failed to investigate a litany of evidence with respect to his ex-girlfriend and prosecution witness, Tierra Faggins. Initially, Childs contends that if counsel had investigated Childs's phone history, she would have discovered that

Faggins could not have overheard Childs discussing the assault with another individual. He further asserts that her history of deceit with regard to her job and their rocky personal relationship rendered her biased and incredible. In rejecting this claim, the Circuit Court stated,

> even if the petition is correct that Faggins fabricated her testimony, it must be reiterated that *the petitioner admitted under oath that he followed the victim and tackled her to the ground* (6/20/18 Tr. Tr. 107). Given the defendant's admission that he was the assailant, the Court finds that the significance of Faggins' testimony regarding his purported admission - and her reason for working with the police - was significantly reduced. It was reasonable, instead, for counsel to focus on the inconsistencies in the victim's story and attack the Commonwealth case regarding intent to defile. Indeed, "[c]ounsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another." *Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987). The Court concludes that this portion of claim 3 cannot satisfy either prong of the *Strickland* test, and should be dismissed.

(ECF No. 46-5, at 18 (alteration in original).)

In Claim 3(c), Childs faults counsel for failing to "investigate evidence of Faggins being the one who told the petitioner's son to throw away the hat, the one that was used to arrest the petitioner and against him at trial as him getting rid of evidence." (ECF No. 39-1, at 17.) In disposing of the variant of this claim raised on state habeas, the Circuit Court stated:

> [Childs stated] that Faggins told his former attorney that *she* was responsible for telling the petitioner's son to throw it away. The petitioner's failure to provide an affidavit from his former counsel or Faggins to substantiate these allegations is fatal to his claim. *See Muhammad*, 274 Va. at 19, 646 S.E.2d at 195 (denying relief where petitioner failed to proffer affidavits regarding witnesses expected testimony). Nor would such hearsay evidence be admissible at trial. Moreover, trial counsel did speak with the defendant's son who indicated that he did not remember anything about the days in question, and therefore could not corroborate any of the defendant's version of events. Finally, again, the hat was a piece of circumstantial evidence that supported the Commonwealth's argument that the defendant was the victim's assailant. The significance of this evidence was substantially diminished after the defendant admitted that he was, in fact, the assailant. In light of the petitioner's own sworn testimony, he cannot establish that additional evidence regarding the hat he was wearing would have changed the result of the proceeding. The Court concludes that this claim cannot satisfy either prong of the *Strickland* test, and should be dismissed.

(ECF No. 46-5, at 19.)

The Court agrees with the Circuit Court's analysis of these claims. Counsel was not deficient for wasting time on the extraneous investigations Childs urges here. Constitutionally competent counsel does not contemplate limitless resources. Because Childs fails to demonstrate deficiency of prejudice, Claims 3(b) and 3(c) will be DISMISSED.

In Claim 3(d), Childs faults counsel for failing to investigate the line up that was conducted by Detective Christianson. In rejecting this claim, the Circuit Court concluded:

> The Court finds that this claim cannot satisfy either prong of the *Strickland* test. First, the petitioner has failed to proffer the result of such investigation. This failure is fatal to his claim. *Beaver v. Thompson*, 93 F .3d 1186, 1195 ( 4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). Second, the petitioner cannot demonstrate prejudice because he agreed that he was the man who assaulted the victim. The results of the line-up are immaterial under these circumstances. The Court concludes that this claim cannot satisfy either prong of the *Strickland* test, and should be dismissed.

(ECF No. 46-5, at 20.) The Court agrees that Childs cannot demonstrate deficiency or prejudice. Claim 3(d) will be DISMISSED.

In Claim 3(e), Childs complains that "counsel chose a defense that proved the exact same elements as abduction, but the facts were of a simple assault." (ECF No. 39-1, at 18.) Childs's criticism is unwarranted.   As counsel stated during closing argument, "Our position is what happened was an assault. It was an assault as a result of Dominque Childs losing his temper." (ECF No. 46-7, at 1004.) During closing argument, counsel also attempted to challenge the prosecution's contention that Childs had dragged the victim from the sidewalk into the woods. (*See, e.g.*, 46-7 at 1010.)   In short, counsel pursued the defense Childs faults her for failing to pursue. Childs fails to demonstrate deficiency or prejudice. Claim 3(e) will be DISMISSED.

15

In Claim 3(f), Childs contends that counsel should have investigated whether the victim was listening to music at the time that he assaulted her. In rejecting this claim, the Circuit Court stated:

> The petitioner alleges this evidence could have rebutted the Commonwealth's contention that the petitioner was "sneaking up on the [victim] like a predator." (Mem. 18). The Court finds that this claim cannot satisfy either prong of the *Strickland* test and should be dismissed.
>
> As the Supreme Court has noted, "[t]he reasonableness of counsel's action may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 491 (emphasis added). *See also, Emmett v. Kelly*, 474 F.3d 154, 167–68 (4th Cir. 2007) (2007) ("[C]ounsel, for all their learning and experience, remain in the end the agents of the one most intimately affected.") ( citation omitted)). Here, the petitioner testified that he approached the victim from behind and tackled her when her back was turned. (6/20/18 Tr. 101; 160; 182). He further testified that he watched her put headphones in shortly before he tackled her. (6/20/18 Tr. 101).
>
> Under these circumstances, the Court concludes that trial counsel's decision not to focus on whether the victim was using cell phone data to play music at the time she was tackled was reasonable. *See United States v. Teny*, 366 F.3d 312, 316–318 (4th Cir. 2004) ("[A] fundamental reality of trial practice is that often, a weak witness or argument is not merely useless but, worse than that, may detract from the strength of the case by distracting from stronger arguments and focusing attention on weaknesses."). Nor can the petitioner establish a likelihood of a different result, given his own testimony on this point. The Court concludes that this portion of claim 3 cannot satisfy either prong of the *Strickland* test, and should be dismissed.

(ECF No. 46-5, at 21–22 (alterations in original).) Childs fails to demonstrate deficiency or prejudice. Claim 3(f) will be DISMISSED.

In Claim 3(g), Childs faults counsel for failing to investigate the victim's pants. Childs suggests that such an investigation would have demonstrated that the pants were stretchy and easy to remove. The Circuit Court concluded:

> The Court finds that this claim cannot satisfy either prong of the *Strickland* test, and should be dismissed. Photographs of the victim's clothing and testimony about the victim's clothing were admitted into evidence in this case. (6/18/ l 8 Tr. 149). The petitioner has not proffered what additional value the physical pants could have

16

> provided. Moreover, contrary to the petitioner's suggestion, after viewing the pants
> the jury might have come to the conclusion that it would be *difficult* to pull tight
> workout pants down. Counsel is not ineffective for failing to present evidence that
> has the potential of being "double-edged." *Lewis v. Warden*, 274 Va. 93, 116,645
> S.E.2d 492, 505 (2007). The Court concludes that this portion of claim 3 cannot
> satisfy either prong of the *Strickland* test and should be dismissed.

(ECF No. 46-5, at 22–23.) Further, focus on how much the pants stretched was not critical to the

defense. Counsel could have reasonably concluded that a line of inquiry that suggested he could

easily have removed the victim's pants would diminish their primary defense that Child did not

intentionally touch her pants and the victim could not consistently recall how Childs touched her

or her pants. Accordingly, Claim 3(g) will be DISMISSED because Childs fails to demonstrate

deficiency or prejudice.

In Claim 4, Childs complains that counsel elicited damaging statements and evidence

regarding the victim's pants and the existence of witnesses. This claim lack merit for the reasons

stated by the Circuit Court.

> The Court finds that this claim cannot satisfy either prong of the *Strickland* test.
> The Court again finds that trial counsel extensively cross-examined the victim
> about her many statements, and further elicited inconsistent statements from the
> various officers who testified. In this context, counsel's strategy was to highlight
> that the victim's narrative was constantly evolving. For example, shortly after the
> assault she told detectives that the petitioner pulled her pants down to her knees.
> At trial, however, she testified that he never actually pulled her pants down at all,
> noting that, "as he was going to pull down my pants, he just got up and ran."
> (6/18/20 Tr. 118).
> The victim justified her changing story by testifying that she felt "confused"
> at the time of the assault. (6/18/20 Tr. 177). Trial counsel argued in closing that
> once the victim had time to recover from the assault and reflect, she realized her
> pants were never pulled on at all, as indicated in her sworn testimony. Counsel also
> posited that the victim's marijuana use could have clouded her perceptions, and
> when she was free from the effects of the drug she was able to recall more clearly
> that the defendant did not actually pull down her pants. Further, while there were
> no eye-witnesses to the actual assault, the assault occurred mid-day in a public place
> near a busy road. The Court finds that the victim's assumption regarding the reason
> for the abrupt end to the assault was plausible. Accordingly, rather than attack the
> victim on this point, trial counsel was reasonable to focus her cross-examination on

the victim's other inconsistent statements and to suggest in argument a common-sense way to resolve the inconsistencies in the defendant's favor.

This strategy was reasonable under the circumstances and should not be second-guessed by the petitioner in this proceeding. *See Strickland*, 466 U.S. at 688; *Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (*Strickland* does not permit "Monday morning quarterbacking"). The Court concludes claim 4(a) cannot satisfy either prong of the *Strickland* test, and should be dismissed.

(ECF No. 46-5, at 24–25.) Because Childs fails to demonstrate deficiency or prejudice, Claim 4 will be DISMISSED.

In Claim 5(a), Childs faults counsel for failing to call family members to corroborate his activities after the assault. Specifically, he notes that his mother could have testified about her experience with Carmax and his sister could have testified about the reasons for Childs staying at her house. In rejecting this claim, the Circuit Court stated:

At the outset, "decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guess by hindsight." *Williams v. Armentrout*, 912 F.2d 924, 934 (8th Cir. 1990) (en banc) (citation omitted); *see also Blanco v. Singletary*, 943 F.2d 1377, 1495 (11th Cir. 1991) (The decision as to which witnesses to call as an aspect of trial tactics that is normally entrusted to counsel.). Here, counsel avers that petitioner did not provide her with information for any corroborating witnesses. Nevertheless, the Court notes that the petitioner presented all of the information he alleges should have been provided in his own testimony. And, although his family members could confirm the actions he or they took during this time period – i.e. his mother bought a car at Carmax or his sister left town and petitioner stayed at her house – they could not speak to the petitioner's motivations for his actions. These witnesses could not, consistent with the rules of evidence, testify why the petitioner tried to sell Faggins's car to Carmax or why he agreed to stay at his sister's house. Combined with the obvious bias associated with a family member's testimony, trial counsel could have reasonably determined that these witnesses were not necessary to the petitioner's defense. *Cf. Hubbard v. Haley*, 317 F.3d 1245, 1259 (11th Cir. 2003) ("[D]efense counsel, in defending their client's interests, need not urge every conceivable objection the law would provide."). For the same reasons he cannot demonstrate that had counsel called these witnesses, the result of the proceeding would have been different. The Court concludes that claim 5(a) cannot satisfy either prong *Strickland* test, and should be dismissed.

(ECF No. 46-5, at 26–27 (alteration in original).) That decision is entirely reasonable. Accordingly, Claim 5(a) will be DISMISSED.

18

In Claims 5(b) and 5(c), Childs faults counsel for failing to call Charles Swedish, Childs's former counsel, to testify that Faggins had told Swedish that she directed Childs's son to throw away the red hat. Additionally, Childs contends counsel should have called Bruce, Faggins's coworker, because "Bruce is the person who Faggins told the petitioner she overheard on the phone talking to the police about him." (ECF No. 39-1, at 24.) In rejecting these claims, the Circuit Court stated:

> The Court finds that these claims regarding witness selection also cannot satisfy either prong of the *Strickland* test. The petitioner has failed to proffer any specific testimony from Bruce or Faggins, much less provided sworn statements indicating they would testify in the manner suggested. This failure is fatal to petitioner's claims. *See Muhammad*, 274 Va. at 19, 646 S.E.2d at 195 (denying relief where petitioner failed to proffer affidavits regarding expert witnesses expected testimony). He admits that he was not present when Faggins purportedly made this statement (Mem. 22), and offers no affidavit from Faggins or Swedish to substantiate his claim. The Court concludes that claims 5(b) and 5(d) cannot satisfy either prong of the *Strickland* test, and should be dismissed.

(ECF No. 46-5, at 27–28.) The Court agrees with this conclusion. Furthermore, nothing from any of these witnesses could have altered the result of the trial. Accordingly Claims 5(b) and 5(c) will be DISMISSED because Childs fails to demonstrate deficiency or prejudice.

In Claim 5(d), Childs contends that counsel inadequately prepared the expert to testify about an alleged exculpatory video on the victim's phone that was altered. In dismissing this claim, the Circuit Court made the following conclusions:

> Petitioner's allegations in this claim mischaracterize the record. The Snapchat video and photographs referenced by the petitioner were the subject of litigation throughout the proceedings. The video and photos were taken from the victim's phone during a "phone dump" accomplished by police (6/20/19 Tr. 48) and provided to the petitioner in discovery. (6/15/18 Tr. 27). Prior to trial, counsel sought to establish the admissibility of the photographs, which were edited by the victim using the Snapchat application after she spoke to Detective Christianson. (6/15/18 Tr. 27). The editing included adding animated dog ears to a photo of herself. (6/20/18 Tr. 6). The trial court ruled that counsel should take the issue up during the trial.

19

On the final day of trial, counsel sought to introduce the Snapchat video[6] through Detective Boffi - the detective who originally extracted all of the information from the victim's phone. Because the entire contents of the victim's cell phone would not be admissible at trial, counsel arranged for Detective Boffi to extract just the video to provide to the jury as a defense exhibit. (6/20/18 Tr. 4). Counsel offered the video to demonstrate the victim's state of mind just after the attack. (6/20/18 Tr. 4 ). The trial court, however, ruled that only the portion of the video compilation could come into evidence. (6/20/18 Tr. 8-9). Accordingly, the video was required to be edited by Detective Boffi again before it was used at trial. (6/20/18 Tr. 11). Because the last items added to the video were photographs, Detective Boffi provided screenshots of the relevant portions. (6/20/18 Tr. 52). Detective Bofffi also explained that the photographs, taken using Snapchat, were not individually recoverable using the CellBrite Software employed by the police, they were only available as used in the video. (6/20/18 Tr. 54-55).

Under these circumstances, the edits and omissions referenced by the petitioner are far from sinister or indicative of bath faith as he suggests. Nor could counsel have accomplished anything else with a different expert given the circumstances explained above and the timing of the trial court's ruling regarding admissibility of the video. The Court concludes that claim 5(c) cannot satisfy either prong of the *Strickland* test, and should be dismissed.

(ECF No. 46-5, at 28–29.) The Court agrees with the Circuit Court that Childs cannot demonstrate

deficiency or prejudice. Accordingly, Claim 5(d) will be DISMISSED.

In Claim 5(e), Childs contends that counsel was deficient for failing to present

testimony about his mental state around the time of the incident to show why he angered so quickly. The Petitioner wanted to offer testimony about his initial contact with [the victim] started with him grabbing her phone and that's how they ended up wrestling to the ground. He didn't just come up and tackle her. He thought she was taking pictures or videos making fun of the situation and using it to ignore him, so he wanted to snatch it from her and throw it in retaliation.

(ECF No. 39-1, at 26.) Childs was able to testify that he "was trying to get [the victim's] attention,"

and, "I felt like she was trying to ignore me. I was getting agitated." (ECF No. 46-7, at 872.)

Childs's fails to demonstrate counsel's failure to elicit the additional testimony relating to his

mental state and initial contact with the victim was deficient, much less that it could have altered

---

[6] The "video" is a compilation of videos and photographs taken at different times, which were combined into a single video and posted to social media using the Snapchat application.

the result of his trial.   Claim 5(e) will be DISMISSED because Childs fails to demonstrate deficiency or prejudice.

In Claim 6, Childs contends that counsel labored under an actual conflict of interest.  This claim lacks merit for the reasons stated by the Circuit Court.

> [Childs] alleges that counsel did not represent him sufficiently in a post-trial hearing on obtaining the petitioner's [or the victim's] mental health records because doing so would have exposed her lack of investigation into the matter previously. (Mem. 26-27). The Court finds that this claim cannot satisfy either prong of the *Strickland* test, and should be dismissed.
>
> To succeed on this claim, the petitioner must demonstrate that a "conflict of interest actually affected the adequacy of his representation."  *Mickens v. Taylor*, 535 U.S. 162, 168 (2002); *see also Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). In other words, petitioner's burden is two-fold, he must show: (1) an actual conflict; and (2) an adverse effect on counsel's performance.  The petitioner has not satisfied either part of this two-part test.
>
> "To establish an actual conflict of interest, the petitioner must show that his interests diverge[d] with respect to a material factual or legal issue or to a course of action." *Mickens v. Taylor*, 227 F.3d 203, 213 (4th Cir. 2000), *aff'd* 535 U.S. 162 (internal citation and quotation omitted).  In other words, the petitioner "must show that there was some plausible alternative defense strategy or tactic that might have been pursued, an alternative strategy that was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Guaraldi v. Cunningham*, 819 F.2d 15, 17 (1st Cir. 1978) (emphasis added); *see also United States v. Gilliam*, 975 F.2d 1050, 1059 (4th Cir. 1992) (Hamilton, J., dissenting).
>
> Petitioner has not alleged an actual conflict because trial counsel did, in fact, file and argue the motion as he claims she should have done.  Any risk of exposing herself to censure was taken already, and thus her interests could not be divergent from the petitioner's for this reason.  Further, counsel conducted an adequate investigation, and therefore had no need to "protect herself."  Indeed, the information obtained through discovery indicated that the petitioner suffered from depression and perhaps anxiety.  The victim's mental health was not relevant to the charges against the petitioner, and, as argued earlier counsel's decision to focus elsewhere was reasonable.
>
> Even if counsel had previously subpoenaed the intake records from the local jail, moreover, the records themselves were inadmissible at trial.  And the petitioner had no legal right to obtain actual medical records to substantiate the jail notes.  In short, although petitioner asserts that counsel did not pursue the motion aggressively enough, he has failed to assert what additional steps counsel could have taken to obtain these records and has further failed to supply any legal argument that he was entitled to them.  Petitioner's failures are fatal to his claim. *Cf. Muhammad*, 274 Va. at 16–17, 646 S.E.2d at 193 (denying claim that counsel was ineffective for failing to object when petitioner did not plead any grounds for

objection). Counsel's inability to obtain these records did not create an actual conflict.

In addition, petitioner has failed to allege, much less prove, an adverse effect on counsel's representation of him. Even assuming an actual conflict existed, "[a]dverse effect cannot be presumed from the mere existence of a conflict of interest." *Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002) (citations and quotations omitted). Instead, the burden remains on the petitioner to demonstrate an adverse effect on his defense. *See Mickens*, 535 U.S. at 168 (requiring demonstration of adverse effect when, in a capital case, the defense counsel had previously represented the deceased victim).

Here, the petitioner has not met this burden. Although the petitioner alleges counsel should have come to the post-trial hearing prepared with medical literature to establish how certain mental health conditions might impact the victim, counsel was rightly focused on first determining if the victim *actually suffered* from any medically diagnosed conditions. To this end, the court heard argument on the motion for exculpatory evidence filed by counsel. At that time, counsel sought a court order to enable her to access the victim's medical records, which were maintained by the Fairfax Adult Detention Center. That motion was denied. Because petitioner's argument that counsel was unprepared is dependent on proving the victim's underlying medical diagnosis, his argument does not present plausible defense tactic that would have been pursued absent a conflict. *See Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000) (failure to show that counsel did not pursue a plausible defense strategy or tactic on account of an actual conflict of interest does not entitle petitioner to relief). The petitioner's claim therefore fails both prongs of the *Mickens* test. For all of the forgoing reasons, the Court concludes that claim 6 is without merit and should be dismissed.

(ECF No. 46-5, at 31–34 (first and second alteration added).)  The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's rejection of Claim 6.  *See* 28 U.S.C. § 2254 (d)(1)–(2). The Fourth Circuit has admonished that "[w]hen, [as here], a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law." *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012). That is the case here with respect to actual conflict claim. Accordingly, Claim 6 will be DISMISSED.

In Claim 7(a), Childs faults counsel for failing to aid him in filing post-trial motions and

for failing to speak at his motion to have her removed as counsel. As the Circuit Court observed,

this claim lacks merit.

> First petitioner does not proffer the particular motions he wanted raised or how counsel should have helped him. The Court finds that this failure is fatal to his claim. *Cf. Muhammad*, 274 Va. at 16–17, 646 S.E.2d at 193 (denying claim that counsel was ineffective for failing to object when petitioner did not plead any grounds for objection). In addition, the Court notes that the petitioner was not entitled to bring his own motions while represented by counsel. *See Spencer v. Commonwealth*, 238 Va. 295, 303, 384 S.E.2d 785, 791 (1989) (holding defendant has no constitutional right "to act as co-counsel" because "such a 'hybrid' representation could promote a conflict over who controls tactical trial decisions, thereby frustrating the orderly conduct of the trial"); *Townes v. Commonwealth*, 234 Va. 307, 320, 362 S.E.2d 650, 657 (1987) (holding counsel not ineffective for failing to raise arguments as requested by petitioner, noting that once counsel was appointed, "she controlled the case, and it was for her to decide what questions should be raised.").
>
> Finally, the Court finds that trial counsel was not ineffective for declining to argue to the trial court for her own removal. At a hearing on his motion to withdraw counsel, petitioner explained he distrusted counsel and that counsel had failed to adequately prepare for, or represent him at, trial. When asked by the trial [court] for a response, counsel proffered that her communications with her client were confidential, and she declined to comment on them. (7/20/18 Tr. 9). The trial court denied the motion to withdraw, noting that the trial of this matter had been professionally and capably handled. (7/20/18 Tr. 10).
>
> Here, again, petitioner has not proffered what counsel should have said to the Court. Attorneys have a duty of candor to the tribunal, and given her affidavit in this matter, if asked, counsel would have likely said that she felt that she had represented the defendant capably and could continue to do so. *See* Rule 3.3 Va. R. Prof. Conduct. This response would not have aided the petitioner in his endeavor. Because petitioner has not proffered what counsel should have said or how it would aid him, the Court concludes his claim cannot satisfy either prong of the *Strickland* test and should be dismissed. *Cf. Elliott*, 274 Va. at 61S, 652 S.E.2d at 481 (dismissing claim where petitioner failed "to articulate what type of objection counsel could have successfully made or what type of cautionary instruction counsel should have sought."); *Muhammad*, 274 Va. at 16–17, 646 S.E.2d at 193 (denying claim that counsel was ineffective for failing to object when petitioner did not plead any grounds for objection).

(ECF No. 46-5, at 35–37.) Childs fails to demonstrate deficiency or prejudice. Claim 7(a) will be

DISMISSED.

23

In Claim 7(b), Childs faults counsel for failing to meet with him until two days before sentencing to discuss the presentence report. In rejecting this claim, the Circuit Court stated:

> At the outset, "there is no established 'minimum number of meeting between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.'" *Moody v. Polk*, 408 F.3d 141, 148 (4th Cir. 2005), *cert. denied*, 546 U.S. 1108 (2006) (quoting *United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988)). Here, moreover, petitioner admits that when counsel came to see him *he refused to meet with her*. (Mem. 29). Under these circumstances, he cannot now complain that she was unable to address his concerns at sentencing. *See Strickland*, 466 U.S. at 691 ("[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions"); *Redus v. Swenson*, 468 F.2d 606,607 (8th Cir. 1972) ("Although the Constitution guarantees the right to competent counsel, we cannot expect counsel to be omniscient or clairvoyant."). The Court concludes that claim 7[(b)] cannot satisfy either prong of the *Strickland* test, and should be dismissed.

(ECF No. 46-5, at 38 (first alteration in original).) The Court agrees this claim should be dismissed because Childs fails to demonstrate deficiency or prejudice. Claim 7(b) will be DISMISSED.

In Claim 7(c), Childs complains that counsel failed to discuss with him the issues preserved for appeal. This claim lacks merit for the reasons stated by the Circuit Court.

> He asserts that without her aid, he could not properly file his own motions. The Court finds that this claim cannot satisfy either prong of the *Strickland* test. As previously noted, a criminal defendant has no constitutional right "to act as co-counsel" and such hybrid representation is not permitted. *Spencer*, 238 Va. at 303, 384 S.E.2d at 791; *Townes*, 234 Va. at 320, 362 S.E.2d at 657. Trial counsel was thus not obligated to help petitioner file his own motions while she was appointed to represent him. Furthermore, trial counsel was not appointed for purposes of appeal. Any questions regarding preservation should have been addressed to appellate counsel. The Court concludes that claim 7[(c)] cannot satisfy either prong of the *Strickland* test, and should be dismissed.

(ECF No. 46-5, at 38–39.) Accordingly, Claim 7(c) will be DISMISSED.

In Claim 8, Childs contends that counsel was ineffective for failing to remove several jurors. First, Childs asserts that counsel should have removed juror Wright because she was biased as she previously had been raped. After Juror Wright informed the Circuit Court of this information, a bench conference off-the-record ensued. Juror Wright previously had indicated that

as part of the panel, that she did not "know any reason whatsoever why [she] could not give a fair and impartial trial to the Commonwealth and to the accused, based solely on the law and evidence." (ECF No. 46-7, at 126.)  On this record, Childs fails to demonstrate that counsel's decision not to remove Juror Wright was unreasonable or that he was prejudiced.

Next, Childs asserts that counsel should have moved to strike Juror Wooten, who stated that, as a child, her stroller was grabbed by two men in an amusement park.  (*Id.* at 140.)  Juror Wooten informed the court that she didn't "remember the actual incident" and assured the Circuit Court that it would not affect her in any way.  (*Id.*)  Given this record, counsel's decision not to remove Juror Wooten was reasonable.

Thereafter, Childs asserts that counsel should have struck the juror who stated "he would lean more towards favoring the prosecution because if they had enough evidence to bring the case to trial than usually the defendant is guilty."  (ECF No. 39-1, at 35.)  No juror made a statement of this ilk.  Thus, Childs fails to demonstrate that counsel was deficient.

Next, Childs asserts that his counsel should have removed the juror who indicated he was hard of hearing.  The Circuit Court offered that juror headphones, and the juror assured the Circuit Court that would alleviate the problem.  (ECF No. 46-7, at 126.)  Counsel's decision not to challenge this juror was eminently reasonable.

Finally, Childs asserts that counsel should have removed Juror Omeish, because she indicated she had an imminent wedding that had been cancelled.  Juror Omeish, however, assured the Circuit Court that she would be able focus on the matter at hand and be fair to both sides.  (ECF No. 46-7, at 181–82.)  Given this response, counsel acted reasonably in not challenging Juror Omeish.  Accordingly, Claim 8 will be DISMISSED because Childs fails to demonstrate deficiency or prejudice.

In Claim 9(a), Childs faults counsel for failing to object to a jury instruction that allowed the prosecution to prove abduction and intent to defile with the same act. As noted by the Circuit Court, Childs fails to demonstrate deficiency or prejudice.

> As reflected in the transcript, trial counsel did object to the jury instruction complained of by the petitioner. In particular, trial counsel tried to introduce an instruction based on caselaw that the abduction with force was required to be separate from the assault itself, which the defendant was admitting. (6/21/18 Tr. 6–8). In addition, trial counsel also objected to the model instruction regarding every person intending the consequences of their actions on the grounds it was overly broad and vague, and in this case could confuse the jury. (6/21/18 Tr. 9). The trial court overruled both of these objections. (6/21/18 Tr. 8–9; 11).
>
> Further, petitioner's arguments regarding whether he "covered" the victim misunderstands the instruction in question. The jury was instructed "Sexual molestation, while including sexual intercourse, also embraces many acts which are distinct from sexual intercourse including, but not limited to, the intentional touching of a victim's intimate parts, genitalia, anus, buttocks, groin, breast or material directly covering such intimate parts." (6/21/18 Tr. 19). Contrary to his argument, the jury was not asked to find that the petitioner "covered" the victim in any way. Because all of these claims lack factual basis in the record, the Court concludes that they cannot satisfy either prong of the *Strickland* test, and should be dismissed. *See Hedrick*, 264 Va. at 521, 570 S.E.2d at 862 (finding habeas petitioner had not established deficient performance or prejudice because he failed to provide any evidence to support claim).

(ECF No. 46-5, at 41–43.) Accordingly, Claim 9(a) will be DISMISSED.

In Claim 9(b), Childs complains that counsel failed to obtain an instruction on incidental detention. As the Circuit Court noted in rejecting a similar instruction proffered by counsel, incidental restraint only becomes relevant where there are multiple charged offenses. (ECF No. 46-7, at 974 ("And so that usually comes into play when -- I've had [it] come into play in rape cases where there's rape and abduction.") Accordingly, Childs fails to demonstrate that counsel was deficient or that he was prejudiced by the failure to offer the instruction he urges here. Accordingly, Claim 9(b) will be DISMISSED.

In Claim 9(c), Childs contends that the cumulative effect of counsel's errors prejudiced him. "[A]n attorney's acts or omissions 'that are not unconstitutional individually cannot be added

26

together to create a constitutional violation.'" *Fisher v. Angelone*, 163 F.3d 835, 853 (4th Cir. 1998) (quoting *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996)).   Because in no instance has Childs demonstrated counsel performed deficiently, the cumulative analysis he seeks is not permitted.  Accordingly, Claim 9(c) will be DISMISSED.

### B. Appellate Counsel

In Claim 10, Childs contends that he was denied the effective assistance of appellate counsel.  "In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim or argument on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists.  *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir.2000) (citing *Strickland*, 466 U.S. at 688, 694).   Counsel had no obligation to assert all non-frivolous issues on appeal.   Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)).   A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)).   "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Childs raises a host of complaints about the performance of appellate counsel.   Childs, however, fails to direct the Court to any argument that was clearly stronger than the arguments raised by counsel on appeal.   Moreover, in no instance does Childs demonstrate that if counsel had performed differently he could have prevailed on appeal.   Because Childs fails to demonstrate deficiency or prejudice, Claim 10 will be DISMISSED.

27

## IV. Conclusion

The Motion to Dismiss (ECF No. 44) will be GRANTED.  Childs's claims and the action will be DISMISSED.  Childs's outstanding motions (ECF Nos. 49, 50, 52, 53, 55, 56) will be DENIED.  A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

Date: 13 November 2023
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

28